**KISH, Plaintiff-Appellant, v. CLEVELAND (City) (CTS), Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23584. Decided January 12, 1956.

Coleman Kiss, Albert H. Kiss, for plaintiff-appellant.
Hornbeck, Ritter & Victory, Robert Mooney, for defendant-appellee.

## OPINION

By SKEEL, J:

This appeal is on questions of law from a judgment entered on a jury verdict for the defendant. The action is based on a collision between the automobile of the plaintiff and a streetcar of the defendant which occurred at the intersection of East Ninth Street and Carnegie Avenue in Cleveland, whereby the plaintiff claims to have suffered personal injury and damage to his automobile. The plaintiff claims the following errors:

"1. The Trial Court erred in granting defendant's Motion to Refile

its Amended Answer to Second Amended Petition which contained a so-called second defense, said second defense having previously been ordered stricken from the Amended Answer to Second Amended Petition by previous order of the court, sitting in Court Room No. 1.

"2. The Trial Court erred by submitting, in writing to the Jury, defendant's 'Special Charge Before Argument No. 1.'"

The following facts are not in dispute. The defendant was operating a streetcar south on East Ninth Street somewhat after 7:00 A. M. on September 3, 1949, and at that time the streetcar was approaching and passing through the intersection of East Ninth Street with Carnegie Avenue in the City of Cleveland moving in a southerly direction. The plaintiff, at the same time, was driving his 1936 Chevrolet automobile East on Carnegie Avenue and when he came to the intersection of East Ninth Street, the traffic control signal light was red for Carnegie Avenue traffic and green for East Ninth Street traffic. The plaintiff, who was driving in the middle lane of the three eastbound lanes of Carnegie Avenue, brought his automobile to a stop just west of the west crosswalk of East Ninth Street. The streetcar, when it got to the intersection, proceeded through and as it was doing so, the plaintiff started his automobile forward and a collision resulted. The disputed question of fact has to do with when the traffic light changed and whether or not either or both parties were right fully in the intersection or not, that is either in compliance with or in violation of the traffic signal controlling traffic at that intersection.

Carnegie Avenue is a very wide street. There are six traffic lanes marked off, three for east bound traffic and three for west bound traffic as shown by the evidence.

To give consideration to the errors claimed, a detailed consideration of the evidence is necessary. The plaintiff's first witness was a soldier coming to Cleveland to visit his wife on a seventy-two hour leave from Fort Monmouth, New Jersey. He refused to state how he happened to be going south on East Ninth Street at 7:00 A. M. to go to his wife's address on West 11th Street when coming from Warren on U. S. Route 422. This witness, while driving south on East Ninth Street, had stopped behind the streetcar involved in the collision as it took on a passenger at Eagle Avenue which is the first intersection on the west side of East Ninth Street, two to three hundred feet north of Carnegie Avenue. He testified that after the streetcar doors were shut and the streetcar started forward, he passed the streetcar in second gear and then stopped for the red light at Carnegie. He said that the streetcar then passed him into the intersection, but by that time the plaintiff "had started through, when they both connected: * * *." This witness could not remember what parts of the auto and streetcar collided. He said the streetcar then cleared the intersection and stopped. On cross-examination, when asked how far he was from the traffic light when he first noticed the light, testified:

"I would say—I had just passed the streetcar or just was getting ready to pass it when I noticed the light changing and I knew I wasn't going to make the light so I would say that I was approximately twenty-five to thirty feet from the intersection.

"Q. From the intersection?

"A. When the light turned to caution, yes.

"Q. By caution, you mean red or yellow?

"A. No, yellow.

"Q. Yellow?

"A. And when I approached the intersection, it had been red by the time I hit the intersection."

This witness also testified that the front of the streetcar was south of Carnegie when the accident happened. This witness could not tell the speed of the streetcar at the time of the collision or what part of the streetcar came into contact with the automobile.

The second witness was driving East on Carnegie Avenue, the same as was the plaintiff, and had stopped at the west crosswalk of East Ninth Street on the red traffic signal in the east bound traffic lane next to the center of the street so that the plaintiff was to his right. His description of the accident on direct examination was as follows:

"The light turned green. I started forward. I looked north on East Ninth Street and the streetcar was coming and I stopped. I pulled across the crosswalk and stopped. The fellow in the car next to me, in the second lane, I guess, he kept on going."

This witness said that when the streetcar entered the intersection, the traffic light was red for East Ninth Street and that the streetcar was going twenty to twenty-five miles per hour. On cross-examination, he said the East Ninth Street crosswalk was seven or eight feet wide and that he may have only proceeded two feet when he stopped and that Kish kept on going and ran into the side of the streetcar. The witness was then shown plaintiff's exhibit No. 1 (a picture of the streetcar) by plaintiff's counsel, and he marked the point of impact at the front right corner of the streetcar. Upon cross-examination, he testified that his recollection of the facts was better in 1949 when he testified in another hearing under oath than at this time. This record shows that in 1949, he testified under oath:

"Q. * * * You only moved a couple of feet?

"A. Yes, sir. .

"* * *

"Q. And he ran into the side of the streetcar back of the center doors, didn't he?

"A. As I recall it, yes, sir.

"Q. Were these questions as you—and did you give these answers under oath?

"A. If you have them there I must have, Yes, sir.

"Q. And that was the truth?

"A. Yes, sir."

The next witness testified he was **standing** on the southwest corner of the intersection. He said he was going downtown on errands. He said the traffic light was red for Ninth Street traffic. Further, on direct examination, he said he saw the streetcar pass a standing southbound automobile. The streetcar went against the red light, that the streetcar was going twenty to twenty-five miles an hour and that he did not give his name to the police.

On cross-examination, he said the accident happened at 7:00 A. M., that he was going to Bonds to look at suits because there was a sale. (Bond's Store did not open until 10:00 A. M.). He said Bonds was to be the "culmination" of his errands, that he was going first to the Cleveland Cut Flower Company on Eagle, although on the first trial, Bonds was his only destination. He also said at the first trial he was **walking** north on East Ninth from his place of work located on the westside of East Ninth Street south of Carnegie and was fifty feet from the corner when the collision occurred and that he saw the streetcar and auto when they were fifteen or twenty feet apart and that the streetcar traveled five to six feet after the accident. It is a matter of common knowledge that a streetcar going twenty to twenty-five miles per hour could not possibly stop in five or six feet. The witness also said he gave his name to a passenger in plaintiff's car although the plaintiff said he was traveling alone.

The plaintiff testified he was standing in the second eastbound traffic lane on Carnegie Avenue at the west cross walk of East Ninth Street waiting for the light to change to green for Carnegie traffic. That when it changed, he started forward until he hit the streetcar. That he never looked to the left or saw the streetcar from the time he started forward until he hit it, having been in fact looking to the right because of the closeness of the car in the curb lane that turned right into East Ninth Street. That plaintiff has no vision in his left eye resulting from an industrial accident in 1944 but he did not list such physical defect on his application for a driver's license. The plaintiff was due at work at 7:00 A. M. at 12th and Carnegie. The accident took place after 7:00 A. M. at Ninth and Carnegie, which establishes the fact that he was then late for work. On cross-examination the plaintiff testified:

"Q. After the traffic light turned to green, you at no time ever looked to your left for approaching traffic before this accident occurred, did you?

"A. I looked on the light, it is green.

"Q. Mr. Kish, you have testified twice before about this, haven't you. In the first trial and in the second trial?

"A. Yes.

"Q. You at no time after that light turned green ever looked to your left for approaching traffic before this accident occurred, did you?

"A. I don't look.

"Q. You didn't look, did you?

"A. No.

"Q. So your answer is no?

"A. No.

"Q. All right, so you never saw the streetcar before the collision occurred, did you?

"A. No, I did not see the streetcar.

"Q. All right, when the collision occurred, you were shifting into second gear, weren't you?

"A. Yes."

The defendants produced as witnesses two passengers and the motorman to give evidence about the facts of the collision. The first one knew

nothing of the occurrence until the automobile hit the streetcar which he said was just about at the middle. He said the streetcar was not traveling fast, about ten to fifteen miles per hour and was halfway across Carnegie Avenue when this accident happened.

The motorman, who had thirty-nine years experience as a transit company motorman, now retired because of illness, said the accident was after 7:00 A. M. He had stopped at Eagle Avenue to take on a passenger. That the place where he stopped was about two hundred feet north of Carnegie Avenue. That the light was green when he went into the intersection of East Ninth with Carnegie and that he was going ten to fifteen miles per hour. He saw cars standing and headed east on the southside of Carnegie. That he tapped his gong. He then looked straight ahead and proceeded until he heard a crash at the rear end of the car and stopped in ten feet. When he stopped, the front of his car was at the south crosswalk of Carnegie. When he got out. the auto was behind the side doors of the car. He then got in his car and moved it forward so as not to block Carnegie traffic.

On cross-examination, he testified that when he stopped at Eagle Avenue, the Carnegie traffic light was red but turned green as he proceeded forward when he was two hundred feet away.

The final witness was a porter employed at a laundry. He was seated on the right side of the streetcar at about the middle of the car. He testified that the traffic light was green when the streetcar got to Carnegia Avenue and as it passed through the intersection, the auto started up and hit the side of the streetcar about midway. The plaintiff charges this witness in his brief as being illiterate. If such fact was important to the plaintiff, evidence should have been introduced to support such claim. Without evidence, the plaintiff has no right to make such statement in his brief.

The first claim of error is not well taken. The second defense to plaintiff's second amended petition charged that the plaintiff's negligence was the sole proximate cause of his injuries and damage. Such an allegation is, of course, unnecessary but could in no way prejudice the plaintiff. The defendant owes no obligation to establish that he was not negligent and no pleading is necessary as a basis of establishing negligence on the part of the plaintiff contributing proximately to his own injury or, in other words, to establish contributory negligence. But even though this be true, the plaintiff could not be harmed in the slightest by the amendment to the defendant's answer.

The second claim of error is founded on the giving of defendant's request to charge before argument No. 1 which was as follows:

"Benjamin Kish was required to be in the exercise of ordinary care for his own safety while operating his automobile and if you find that such care required him to look to the left for southbound traffic on Ninth Street before entering the intersection and you further find that he failed to so look, then he would be negligent. If you find such negligence directly caused or contributed to cause the collision, then Benjamin Kish cannot recover and your verdict must be for the defendant, the City of Cleveland."

The defendant is entitled to have the jury instructed upon its theory of the case if there is any evidence to support it. In this case the defendant's evidence is that its streetcar entered the intersection when the traffic light was green for Ninth Street traffic; that its car then had a legal right to proceed. That when its streetcar had passed the center of the intersection, the plaintiff ran into the side of such streetcar. The plaintiff's first witness testified that when he was twenty-five to thirty feet from the East Ninth-Carnegie intersection, the traffic light facing East Ninth Street changed from green to yellow and that the streetcar proceeded on at twenty-five miles per hour. It is a matter of common knowledge that at such a wide intersection as that of East Ninth and Carnegie, when the caution light is displayed, it is displayed for at least three second intervals between the alternate red and green signals. At twenty-five miles per hour, the streetcar was going 37-½ feet per second and would have traveled 112.5 feet before the green light would show for Carnegie traffic. If this evidence of the plaintiff be accepted as true, the streetcar was directly across plaintiff's path before he had a legal right to proceed. The law is that a plaintiff who leaves a place of safety and drives into a danger which is obvious and directly in front of him, and which he could not avoid seeing under the circumstances as testified to by credible witnesses, would be guilty of negligence no matter what color the traffic light might be as then displayed. The charge given, which stated that if the jury found under the circumstances that **the exercise of ordinary care would require the plaintiff to look to the left**, then the failure to do so constituted negligence as requested by the defendant, stated a correct proposition of law involved in the case, based on the fact situations claimed by the defendant and supported by credible evidence and was therefore properly given. A request to charge before argument does not have to encompass more than one proposition of law applicable to facts presented by the evidence.

It is claimed that this same question was presented to this court in a previous appeal when this court reversed the trial court for failure to charge contributory negligence and in journalizing its conclusions on that record said that no other errors were found in the record. That entry was based on the evidence in that case and not on the evidence as completely detailed above and presented in the trial from which this appeal is taken. We are not called upon to determine nor do we have the means of knowing now what the evidence was in the first appeal or in what respects it differed from that which is now before us. Such claim is not well founded.

A careful analysis of all of the evidence by the jury would warrant them to conclude that the streetcar moved across the intersection with at least the protection of the caution light because the plaintiff did not come in contract with it until it had passed all three westbound lanes and until it was across the middle traffic lane for eastbound traffic, the streetcar moving at such a slow speed that it could be stopped within ten feet. That the plaintiff, in driving his automobile east on Carnegie, stopped as required by the traffic signal, proceeding after the light

changed to green, from a standing position and moving not over thirty feet before it collided with the middle or rear of the streetcar directly in his view. A verdict for the plaintiff under such circumstances, if established by a fair analysis of all the evidence, would be against the manifest weight of the evidence. There can be no question but that the record clearly discloses that substantial justice has been done the plaintiff by the verdict of the jury in this case, and his appeal should be dismissed.

Exceptions noted. Order see journal.

KOVACHY, PJ, HURD, J, concur.